http://www.va.gov/vetapp16/Files6/1644965.txt

Citation Nr: 1644965 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 12-33 779A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Pittsburgh, Pennsylvania

THE ISSUE

Entitlement to an initial compensable evaluation for bilateral hypertensive retinopathy to include retinal macroaneurysm in the left eye status post laser.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Bonnie Yoon, Associate Counsel

INTRODUCTION

The Veteran served on active duty from May 1986 to October 1996. This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Pittsburgh, Pennsylvania.

REMAND

The Veteran is seeking a compensable initial evaluation for his service-connected bilateral hypertensive retinopathy, to include retinal macroaneurysm in the left eye status post laser. The Board, in a December 2013 remand, directed that the Veteran's updated private and VA treatment records be obtained, and that a VA examination be conducted. 

The record reflects that VA treatment records from December 2010 to January 2014 were obtained and associated with the claims file. While the Veteran indicated in a February 2014 statement that he only received VA treatment since his laser procedure in November 2010; VA treatment records from August 2011 indicate that the Veteran had a followup appointment with Dr. L. from the Elk County Eye Clinic. As there may be additional outstanding private treatment records from the Elk County Eye Clinic, on remand, the Veteran should be contacted and asked to complete the proper release forms, and then the complete treatment records from Dr. L. of the Elk County Eye Clinic should be obtained.

Also, as the claims file only contains VA treatment records up to January 2014, updated treatment records should be obtained and associated with the claims file.

The Veteran was last afforded a VA examination in January 2014. Given that the most recent VA examination is almost three years old and there are no updated treatment records in which to evaluate the current severity of the Veteran's eye disability, the Board finds a remand is necessary to afford the Veteran a contemporaneous VA examination to determine the current severity of his bilateral hypertensive retinopathy to include retinal macroaneurysm in the left eye status post laser. See Allday v. Brown, 7 Vet. App. 517, 526 (1995) (indicating that where the record does not adequately reveal the current state of the claimant's disability, fulfillment of the statutory duty to assist requires a contemporaneous medical examination, particularly if there is no additional medical evidence that adequately addresses the level of impairment of the disability since the previous examination).

Accordingly, the case is remanded for the following actions:

1. The RO must contact the Veteran and afford him the opportunity to identify or submit any additional pertinent evidence in support of his claim. Based on his response, the RO must attempt to procure copies of all records which have not previously been obtained from identified sources.

When requesting records not in the custody of a Federal department or agency, such as private treatment records, the RO must make an initial request for the records and at least one follow-up request if the records are not received or a response that records do not exist is not received. Regardless of the Veteran's response, the RO must attempt to obtain: 

(a) the complete treatment records from Dr. L. of the Elk County Eye Clinic; 

(b) updated VA treatment records from January 2014 to the present. 

All attempts to secure this evidence must be documented in the claims file by the RO. If, after making reasonable efforts to obtain named records the RO is unable to secure same, the RO must notify the Veteran and (a) identify the specific records the RO is unable to obtain; (b) briefly explain the efforts that the RO made to obtain those records; (c) describe any further action to be taken by the RO with respect to the claims; and (d) that he is ultimately responsible for providing the evidence. The Veteran and his representative must then be given an opportunity to respond.

2. Then, the Veteran must be afforded an appropriate examination to determine the current manifestations and severity of his service-connected bilateral hypertensive retinopathy, to include retinal macroaneurysm in the left eye status post laser. Appropriate notice of the rescheduled examination must be mailed to the Veteran's current address of record. The claims file must be made available to the examiner, and the examiner must specify in the examination report that these records have been reviewed. All indicated diagnostic tests and studies must be accomplished. All pertinent symptomatology and findings must be reported in detail.

The examiner must report findings pertinent to the eyes, to include impairment of central visual acuity and visual fields. The examiner must also indicate whether the retinopathy is productive of incapacitating episodes (a period of acute symptoms severe enough to require prescribed bed rest and treatment by a physician or other healthcare provider) and if so, state the total duration in number of weeks during the past 12 months. Additionally, the examiner must address the specific complaints of the Veteran, to include full details concerning the Veteran's complaints of vision-related headaches. Then, the examiner must state whether such complaints are related to the service-connected bilateral hypertensive retinopathy, to include retinal macroaneurysm in the left eye status post laser. 

The examiner must also consider and describe the functional effects of the Veteran's bilateral hypertensive retinopathy on his occupation in the examination report.

The examiner must provide a complete rationale for all opinions expressed. If the examiner cannot provide the requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation. The examiner must indicate whether there was any further need for information or testing necessary to make a determination. The examiner must indicate whether an opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner. 

3. The RO must notify the Veteran that it is his responsibility to report for the scheduled examination, and to cooperate in the development of the claim. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for the scheduled examination, documentation must be obtained and associated with the evidence of record that shows that notice scheduling the examination was sent to his last known address. Documentation must be also be obtained and associated with the evidence of record demonstrating any notice that was sent was returned as undeliverable.

4. The RO must review the examination report and ensure that all requested development has been completed in full. If a report is deficient in any manner, undertake corrective actions prior to any further adjudication of the claim.

5. After completing the above actions, and any other development as may be indicated by a response received as a consequence of the actions taken in the paragraphs above, the claim must be readjudicated. If the benefit on appeal remains denied, a supplemental statement of the case must be provided to the Veteran and his representative. After they have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

No action is required by the Veteran until he receives further notice; however, he may present additional evidence or argument while the case is in remand status at the RO. Kutscherousky v. West, 12 Vet. App. 369 (1999).

_________________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).